**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joe Hand Promotions, Inc., | ) No. CV-10-02457-PHX-NVW |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| James P. Kostopoulos, et al., | ) |
| Defendants. | ) |

      Before the Court is Plaintiff's Application for Default Judgment by the Court (Doc. 17), which will be granted in the amount of $15,000 for the reasons stated below.

**I.  Background**

      On November 12, 2010, Plaintiff filed the instant action against Defendants, alleging violations of 47 U.S.C. §§ 553 and 605, and conversion. Plaintiff is an international distributor of sports and entertainment programming. Plaintiff purchased and retained the commercial exhibition licensing rights to "Ultimate Fighting Championship 91: Couture v. Lesnar," the program at issue here. Plaintiff marketed the rights to sublicense this fight to its commercial customers. Plaintiff alleges that Defendants intentionally and unlawfully intercepted, received, and exhibited the fight via closed-circuit television on November 15, 2008 at Vertucci's Rockin' Italian Sports Grill, Defendants' establishment. Plaintiff contends that piracy of its programming such as this costs the company, its customers and

the community millions of dollars annually, and believes that such piracy is rampant because of the perceived lack of consequences for unlawfully intercepting and exhibiting such programs. Plaintiff has accordingly requested that the Court award the maximum statutory damages, including enhanced damages for willful violations and damages for conversion.

Defendants were served with the summons and complaint on February 2, 2011 (Docs. 11, 12). Defendants have not answered the complaint or otherwise appeared in this action. Plaintiff applied for entry of default against Defendants pursuant to Fed. R. Civ. P. 55(a), which was entered by the Clerk of the Court on March 7, 2011 (Doc. 16). Plaintiff filed the pending application for default judgment on April 8, 2011 (Doc. 17), along with an affidavit in support of its motion (Doc. 18). Plaintiff requests that the Court enter default judgment against Defendants in the amount of $110,875.00. Defendants have not responded to the application for default judgment.

**II.    Legal Standard**

Under Fed. R. Civ. P. 55(b)(2), the Court has discretion regarding the entry of default judgment. The Court may consider the following factors when determining whether the entry of default judgment is appropriate: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986). "Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true." *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

**A.    47 U.S.C. § 553**

Unauthorized reception of cable service is governed by 47 U.S.C. § 553, which provides that "no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. §

1  553(a)(1). An aggrieved party under § 533 may recover statutory damages of "not less than
2  $250 or more than $10,000 as the court considers just" for all violations. 47 U.S.C. §
3  553(c)(3)(A)(ii). However, in any case in which the Court finds that "the violation was
4  committed willfully and for purposes of commercial advantage or private financial gain," the
5  Court may increase the award of damages by up to $50,000. 47 U.S.C. § 553(c)(3)(B).

6  **B.   47 U.S.C. § 605**

7  47 U.S.C. § 605, which address unauthorized publication or use of wire or radio
8  communications, states in relevant part:

> (a) ... no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney.... No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

18  The aggrieved party under 47 U.S.C. § 605 is authorized to obtain statutory damages of "not
19  less than $1,000 or more than $10,000, as the court considers just" for each violation. 47
20  U.S.C. § 605(e)(3)(C)(i)(II). The Court may also award enhanced damages of up to $100,000
21  for each violation if it finds the violation was willfully committed for commercial advantage
22  or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii).

23  **III.   Analysis**

24  Plaintiff has elected to seek statutory damages under § 605(e)(3)(C)(i)(II), which
25  permits recovery of between $1,000 and $10,000 per violation. To determine an appropriate
26  award, the Court balances the need to deter future illegal conduct against the harm that will
27  result to Defendants' business by assessing significant damages. *Kingvision Pay-Per-View*
28  *v. Lake Alice Bar*, 168 F.3d 347, 360 (9th Cir. 2009). Although Plaintiff has not alleged the

exact means of transmission of the broadcast in this case, and it is thus unclear whether an award of damages is pursuant to § 553 or § 605, an award here is appropriate under either standard because the Court's award of statutory damages falls within the limits of both sections. *See J & J Sports Prod., Inc. v. Hernandez*, No. CV09-3389-GEB-KJN, 2010 WL 1980186, * 4 (E.D. Cal. 2010).

In this case, Vertucci's Rockin' Italian Sports Grill is a commercial establishment with a maximum capacity of 50-60 people. According to Plaintiff's investigator, on November 15, 2008, the establishment had six 46" televisions broadcasting the fight. Plaintiff's investigator conducted three head counts while he was present, noting the total number of patrons at the establishment was, at various times, 80, 82, or 85. There was no cover charge to enter the establishment, but there was a flyer on the door advertising the fight and food and drink specials. If Defendants had purchased the rights to show the broadcast, the commercial sublicense fee would have been $875. Because broadcasting the fight in these circumstances is a clear violation of either § 553 or § 605, the Court will award $5,000 in statutory damages.

Plaintiff has also requested $100,000 for enhanced damages. By Defendants' default, they have admitted to willfully violating the referenced statutes for purposes of commercial advantage. In determining the appropriate amount of enhanced damages to award, "Courts generally consider factors such as repeat violations, substantial unlawful monetary gains, significant actual damages to plaintiff, advertising, cover charges, or charging premium menu and drink prices . . . [but some] courts find the mere unauthorized showing of a program sufficient to award enhanced damages because given the low probability of accidentally showing it, it must have been done willfully and for profit." *J & J Sports Prods., Inc. v. Miramontes*, No. CV10-2345-PHX-FJM, 2011 WL 892350, *2 (D. Ariz. 2011) (internal citations omitted).

Here, there was a relatively significant number of patrons viewing the fight, the fight was broadcast on six large televisions, and there is evidence of at least limited advertising of the event. However, there was no cover charge for the event, and no evidence of prior

- 4 -

1  violations or substantial unlawful monetary gains by Defendants. While the Court agrees
2  that Defendants acted wilfully and that enhanced damages are appropriate, the requested
3  $100,000 is excessive. Considering the aggravating factors present here, the Court concludes
4  that $10,000 is an appropriate award of enhanced damages to sufficiently deter future
5  violations. *See, e.g.*, *Joe Hand Promotions, Inc. V. Tidmarsh*, No. CV09-097-LJO-GSA,
6  2009 WL 1845090 (E.D. Cal. 2009) (awarding $10,000 in enhanced damages where 50-
7  person capacity establishment unlawfully broadcast event on one television).

8  Finally, Plaintiff has also requested $875 for actual damages as the amount it would
9  have made had Defendants lawfully paid for the right to show the program. However, the
10 statutory damages awarded sufficiently compensate Plaintiff for its loss. No additional
11 damages for conversion will be assessed.

12 IT IS THEREFORE ORDERED that Plaintiff's Application for Default Judgment by
13 the Court (Doc. 17) is granted in the amount of $15,000. The Clerk is directed to enter
14 judgment for Plaintiff and against Defendants in the amount of $15,000.

15 DATED this 2nd day of May, 2011.

_____
Neil V. Wake
United States District Judge